TYSON, Judge.
 

 *813
 
 Timothy Chadwick Fleming ("Defendant") appeals from jury convictions of common law robbery, conspiracy to commit common law robbery, misdemeanor larceny, and of having attained habitual felon status. The trial court arrested judgment on the misdemeanor larceny charge. We find no error in part, reverse the judgment in part, and remand for re-sentencing.
 

 I. Factual Background
 

 On 30 April 2013, a theft occurred at a Marshalls store located in Charlotte, North Carolina. The store's video surveillance system recorded the theft and depicted a male, later identified as Defendant, enter Marshalls, walk around the women's handbag area, and leave the store. A second male entered the store five minutes later. The second male, identified as Roger McCain ("McCain"), walked directly to the women's handbag area, picked up several handbags, and attempted to exit the store.
 

 *814
 
 Assistant manager Tracy Wetzel ("Wetzel") was working in the front vestibule of the store arranging shopping carts, when she observed McCain approach the exit with an armload of Michael Kors purses. Wetzel stepped toward McCain and asked him "if [she] could help him." McCain pushed Wetzel out of the way and exited the store.
 

 While Wetzel was not physically injured, McCain pushed her with enough force into the sliding doors to knock them off of their hinges. McCain jumped into a white Toyota Camry, which displayed a handmade cardboard license plate. The Toyota was waiting for McCain at the curb. Defendant was the driver.
 

 Charlotte-Mecklenburg Police Department Detective Barry C. Kipp ("Detective Kipp") used license plate information obtained from the Toyota's cardboard plate and learned the vehicle belonged to Defendant's mother and it was parked at Defendant's address. He identified Defendant as the first man seen in the Marshalls surveillance video. Detective Kipp asked to interview Defendant. Defendant waived his Miranda rights and agreed to speak with Detective Kipp.
 

 During the interview, Defendant admitted to his involvement in the Marshalls theft. Defendant stated he and McCain had planned to steal handbags from Marshalls. Defendant identified himself and McCain as the perpetrators in the surveillance video. Defendant stated he was not aware of an altercation with Wetzel until McCain got into the vehicle after stealing the handbags.
 

 On 6 January 2014, Defendant was indicted for common law robbery, conspiracy to commit common law robbery, felonious larceny, and having attained the status of habitual felon.
 

 The State presented the evidence summarized above and the video of Detective Kipp's interview with Defendant. The trial court also admitted the State's Rule 404(b) evidence of other crimes. The first incident was introduced through Marshalls and T.J. Maxx corporate investigator Jonathan Nix ("Nix"). Nix testified that he was called to investigate a theft, which had occurred on 12
 
 *764
 
 April 2013 at a T.J. Maxx retail store in Mooresville, North Carolina.
 

 Nix testified he was familiar with the camera system used at the Mooresville T.J. Maxx store, the system was functioning correctly at the time of the theft, and he made a copy of the surveillance video showing a theft of handbags similar to the theft at the Charlotte Marshalls. Nix testified the video proffered by the State was the one he had copied
 
 *815
 
 and it had not been edited. This video was admitted into evidence and published to the jury.
 

 The second incident was introduced through Mark Armstrong ("Armstrong"). Armstrong testified he was operating the surveillance camera system at Dillards Department Store in Gastonia, North Carolina on 1 April 2013. From the surveillance camera, he observed a male subject enter the store and steal five or six handbags.
 

 The court instructed the jury to limit their use of this evidence to:
 

 "show the identity of the person who committed the crimes charged in this case if they were committed, that the defendant had motive for the commission of the crimes charged in this case, that the defendant had the intent which was a necessary element of the crimes charged in this case, that the defendant had the knowledge which is a necessary element of the crimes charged in this case, that there existed in the mind of the defendant a plan, scheme, system or design involving the crimes charged in this case, the absence of mistake and absence of accident."
 

 Defendant did not present any evidence.
 

 The jury convicted Defendant of common law robbery, conspiracy to commit common law robbery, and misdemeanor larceny. He was also convicted of attaining habitual felon status. The trial court arrested judgment on the conviction of misdemeanor larceny.
 

 For common law robbery, Defendant was sentenced to 127 to 165 months imprisonment as an habitual felon. For conspiracy to commit common law robbery, Defendant was sentenced to 89 to 119 months imprisonment as an habitual felon.
 

 II. Issues
 

 Defendant argues the trial court erred by: (1) admitting his videotaped confession into evidence; (2) admitting 404(b) evidence of other crimes or bad acts through hearsay testimony; (3) denying his motion to dismiss; and, (4) sentencing Defendant to two consecutive sentence terms which would run consecutively to any sentence which may be imposed upon Defendant in the future.
 

 III. Admission of Videotape Confession as Illustrative Evidence
 

 Defendant argues the State failed to lay a proper foundation for admission of the videotape of his confession. We disagree.
 

 *816
 

 A. Standard of Review
 

 "In determining whether to admit photographic evidence, the trial court must weigh the probative value of the photographs against the danger of unfair prejudice to defendant."
 
 State v. Blakeney,
 

 352 N.C. 287
 
 , 309,
 
 531 S.E.2d 799
 
 , 816 (2000). "This determination lies within the sound discretion of the trial court, and the trial court's ruling should not be overturned on appeal unless the ruling was manifestly unsupported by reason or [was] so arbitrary that it could not have been the result of a reasoned decision."
 
 State v. Goode,
 

 350 N.C. 247
 
 , 258,
 
 512 S.E.2d 414
 
 , 421 (quotations omitted).
 

 B. Analysis
 

 "Photographs and video are usually competent to be used by a witness to explain or illustrate anything that it is competent for him to describe in words."
 
 State v. Stewart,
 

 231 N.C.App. 134
 
 , 141,
 
 750 S.E.2d 875
 
 , 880 (2013) (citation omitted).
 
 See also
 

 State v. Billings,
 

 104 N.C.App. 362
 
 , 371,
 
 409 S.E.2d 707
 
 , 712 (1991) (basic principles governing the admissibility of photographs apply also to motion pictures).
 

 Video images may be introduced into evidence for illustrative purposes after a proper foundation is laid. N.C. Gen.Stat. § 8-97 (2015). The proponent for admission of a video lays this foundation with "testimony that the motion picture or videotape fairly and accurately illustrates the events filmed (illustrative purposes)."
 

 *765
 

 State v. Cannon,
 

 92 N.C.App. 246
 
 , 254,
 
 374 S.E.2d 604
 
 , 608-09 (1988),
 
 rev'd on other grounds,
 

 326 N.C. 37
 
 ,
 
 387 S.E.2d 450
 
 (1990),
 
 cert. denied,
 

 356 N.C. 311
 
 ,
 
 571 S.E.2d 208
 
 (2002).
 

 Over Defendant's objection, videotape of Detective Kipp's interview with Defendant was allowed into evidence. Defendant's objection only addressed whether the State had laid a proper foundation to admit the evidence, not whether Detective Kipp was competent to testify to the interview. He testified that the videotape was a "fair and accurate depiction of the interview." The videotape was shown to the jury solely to illustrate Detective Kipp's testimony.
 

 Because the videotape was admitted only for illustrative purposes, and testimony asserted the videotape fairly and accurately illustrated the events filmed, this testimony meets the authentication requirements enunciated in
 
 Cannon
 
 for admission for illustrative purposes. This assignment of error is overruled.
 

 *817
 

 IV. 404(b) Evidence of Other Crimes
 

 Defendant argues the trial court erred by allowing the State to introduce hearsay evidence of other crimes committed by Defendant pursuant to N.C. Gen.Stat. § 8C-1, Rule 404(b).
 

 A. Standard of Review
 

 "Determining the competency of a witness to testify is a matter which rests in the sound discretion of the trial court."
 
 State v. Phillips,
 

 328 N.C. 1
 
 , 17,
 
 399 S.E.2d 293
 
 , 301,
 
 cert. denied,
 

 501 U.S. 1208
 
 ,
 
 111 S.Ct. 2804
 
 ,
 
 115 L.Ed.2d 977
 
 (1991). "To test the competency of a witness, the trial judge must assess the capacity of the proposed witness to understand and to relate under oath the facts which will assist the jury in determining the truth with respect to the ultimate facts."
 
 State v. Liles,
 

 324 N.C. 529
 
 , 533,
 
 379 S.E.2d 821
 
 , 823 (1989).
 

 "The trial court must make only sufficient inquiry to satisfy itself that the witness is or is not competent to testify. The form and manner of that inquiry rests within the discretion of the trial judge."
 
 In re Will of Leonard,
 

 82 N.C.App. 646
 
 , 649,
 
 347 S.E.2d 478
 
 , 480 (1986).
 

 B. Analysis
 

 The challenged testimony was elicited during the
 
 voir dire
 
 of Nix, who investigated a theft of handbags in Union County. The
 
 voir dire
 
 was held to determine the admissibility of surveillance video of the theft. This evidence was introduced pursuant to Rule 404(b) for the purpose of showing motive, intent, preparation, or plan.
 
 See
 
 N.C. Gen.Stat. § 8C-1, Rule 404(b) (2015). "[P]reliminary questions concerning the qualification of a person to be a witness are determined by the trial court, which is not bound by the rules of evidence in making such a determination. In determining whether a person is competent to testify, the court may consider any relevant information which may come to its attention."
 
 In re Faircloth,
 

 137 N.C.App. 311
 
 , 316,
 
 527 S.E.2d 679
 
 , 682 (2000) (citation omitted).
 

 The trial court was not acting as the trier of fact, and was not bound by the Rules of Evidence while making a preliminary determination outside the presence of the jury. The testimony of Nix was properly admitted by the trial court during the
 
 voir dire
 
 hearing.
 

 Defendant also argues surveillance video from the Union County T.J. Maxx was inadmissible because it was not based on Nix's personal knowledge. Nix was not present when the theft recorded took place.
 

 "Real evidence is properly received into evidence if it is identified as being the same object involved in the incident and it [is] shown that the object has undergone no material change."
 
 State v. Snead,
 
 ---N.C. ----, ----,
 
 783 S.E.2d 733
 
 , 736-37,
 
 2016 WL 1551403
 
 , at *3 (N.C. Apr. 15, 2016) (internal quotation marks and citation omitted). " Recordings such as a tape from an automatic surveillance camera can be authenticated as the accurate product of an automated process under Rule 901(b)(9)."
 

 Id.
 

 (quotation and citation omitted). The State may authenticate the video and lay a proper foundation for its admission with evidence showing that the recording process is reliable and that the video introduced at trial is the same video that was produced by the recording process.
 

 Id.
 

 *766
 
 During
 
 voir dire,
 
 Nix testified the surveillance video system was functioning properly at the time the video was captured and the video images introduced at trial were unedited and were the same video images created by this system. The surveillance video was adequately authenticated.
 
 See
 
 id.
 

 The State laid a proper foundation to support its introduction into evidence. This assignment of error is overruled.
 

 V. Conspiracy to Commit Common Law Robbery
 

 Defendant argues the State presented insufficient evidence tending to show he entered into an agreement to perform every element of common law robbery. We agree.
 

 A. Standard of Review
 

 "Upon defendant's motion for dismissal, the question for the court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense."
 
 State v. Fritsch,
 

 351 N.C. 373
 
 , 378,
 
 526 S.E.2d 451
 
 , 455 (2000) (citation and internal quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
 
 State v. Smith,
 

 300 N.C. 71
 
 , 78-79,
 
 265 S.E.2d 164
 
 , 169 (1980). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor."
 
 State v. Rose,
 

 339 N.C. 172
 
 , 192,
 
 451 S.E.2d 211
 
 , 223 (1994),
 
 cert. denied,
 

 515 U.S. 1135
 
 ,
 
 115 S.Ct. 2565
 
 ,
 
 132 L.Ed.2d 818
 
 (1995). "This Court reviews the trial court's denial of a motion to dismiss
 
 de novo.
 
 "
 
 State v. Smith,
 

 186 N.C.App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007).
 

 *819
 

 B. Analysis
 

 "A criminal conspiracy is an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way or by unlawful means."
 
 State v. Bindyke,
 

 288 N.C. 608
 
 , 615,
 
 220 S.E.2d 521
 
 , 526 (1975) (citations omitted).
 

 Whether or not an agreement exists to support a finding of guilt in a conspiracy case is generally inferred from an analysis of the surrounding facts and circumstances, rather than established by direct proof.
 
 State v. Whiteside,
 

 204 N.C. 710
 
 , 712-13,
 
 169 S.E. 711
 
 , 712 (1933). The mere fact that the crime the defendant allegedly conspired with others to commit took place does not, without more, prove the existence of a conspiracy.
 
 State v. Arnold,
 

 329 N.C. 128
 
 , 142,
 
 404 S.E.2d 822
 
 , 831 (1991). "If the conspiracy is to be proved by inferences drawn by the evidence, such evidence must point unerringly to the existence of a conspiracy."
 
 State v. Massey,
 

 76 N.C.App. 660
 
 , 662,
 
 334 S.E.2d 71
 
 , 72 (1985). "There is a distinction between the offense to be committed and the conspiracy to commit the offense. In the one, the
 
 corpus delicti
 
 is the act itself; in the other, it is the conspiracy to do the act."
 
 Whiteside,
 

 204 N.C. at 712
 
 ,
 
 169 S.E. at 712
 
 (citations omitted).
 

 Here, to survive a motion to dismiss, the State was required to prove "an agreement [between Defendant and Roger McCain]
 
 to perform every element of
 
 " common law robbery.
 
 State v. Dubose,
 

 208 N.C.App. 406
 
 , 409,
 
 702 S.E.2d 330
 
 , 333 (2010) (
 
 quoting
 

 State v. Suggs,
 

 117 N.C.App. 654
 
 , 661,
 
 453 S.E.2d 211
 
 , 215 (1995) ) (emphasis supplied). Common law robbery is "the felonious, non-consensual taking of money or personal property from the person or presence of another by means of violence or fear."
 
 State v. Smith,
 

 305 N.C. 691
 
 , 700,
 
 292 S.E.2d 264
 
 , 270,
 
 cert. denied,
 

 459 U.S. 1056
 
 ,
 
 103 S.Ct. 474
 
 ,
 
 74 L.Ed.2d 622
 
 (1982).
 

 The State attempted to connect Defendant with the "violence or fear" element of the common law robbery through the testimony of Detective Kipp. When asked whether Defendant stated "he was aware of the altercation with the manager at Marshalls" [Ms. Wetzel], during his conversations with police, Detective Kipp testified that Defendant indicated that he was only aware an altercation had occurred once Roger McCain "got back in the vehicle" as they escaped following the robbery.
 

 *767
 
 During cross-examination of Detective Kipp, this exchange occurred regarding the common law robbery charge:
 

 Q. Now, in your interview and investigation in this case you had no-you received no information at all that
 
 *820
 
 Mr. Fleming was involved at all with the actual assault upon Ms. Wetzel; is that correct?
 

 A. Correct.
 

 Q. He was sitting in the car [sic] far as what you understand the situation?
 

 A. He was driving the car, correct.
 

 Q. He said he didn't see the incident at all, and you don't have any evidence to prove otherwise, do you?
 

 A. No.
 

 Q. Now, when Assistant DA says a plan, you haven't-Mr. Fleming said nothing about any plan, did he?
 

 A. I don't remember.
 

 Q. Okay. And, in fact, there is no evidence at all from Mr. Fleming about any plan to commit any kind of common law robbery, was there-or has he?
 

 A. No. There's no plan for that, no.
 

 Considering this evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference, and resolving any contradictions in its favor, the State presented no evidence of an agreement to support a conspiracy to commit common law robbery between Defendant and McCain.
 

 The only evidence presented at trial tended to show the absence of such an agreement. McCain's use of or "means of violence or fear" to push Wetzel aside to consummate the larceny was unknown to Defendant until after the robbery. None of the other "grab and run" larcenies involving Defendant and McCain showed any other takings occurred "by means of violence or fear." The trial court erred by denying Defendant's motion to dismiss the charge of conspiracy to commit common law robbery.
 

 VI. Sentencing
 

 Defendant argues the trial court erred by sentencing him to two consecutive sentences, which would also run consecutively to any sentence imposed upon Defendant in the future. Defendant contends such sentence violates his constitutional right to be free from cruel and unusual punishment. U.S. Const. Amend. VIII ; N.C. Const. Art. I, Sec. 27.
 

 *821
 

 A. Preservation of Error
 

 The State argues Defendant has not preserved this issue for appellate review, as he failed to raise this constitutional issue at trial.
 
 See
 

 State v. Garcia,
 

 358 N.C. 382
 
 , 410,
 
 597 S.E.2d 724
 
 , 745 (2004) ("[C]onstitutional matters that are not raised and passed upon at trial will not be reviewed for the first time on appeal." (Internal citations and quotation marks omitted)).
 

 "An error at sentencing is not considered an error at trial for the purpose of [Appellate] Rule 10(a) because this rule is directed to matters which occur at trial and upon which the trial court must be given an opportunity to rule in order to preserve the question for appeal."
 
 State v. Curmon,
 

 171 N.C.App. 697
 
 , 703,
 
 615 S.E.2d 417
 
 , 422 (2005) (internal citation and quotation marks omitted). Defendant was not required to object at sentencing to preserve the issue on appeal.
 
 State v. Pettigrew,
 

 204 N.C.App. 248
 
 , 258,
 
 693 S.E.2d 698
 
 , 704-05 (2010) (citation omitted).
 

 B. Standard of Review
 

 Within the limits of the sentence permitted by law, the character and extent of the punishment to be imposed rests within the sound discretion of the court. We review the sentence for manifest and gross abuse.
 
 State v. Hullender,
 

 8 N.C.App. 41
 
 , 42,
 
 173 S.E.2d 581
 
 , 583 (1970),
 
 see also
 

 State v. Sudderth,
 

 184 N.C. 753
 
 ,
 
 114 S.E. 828
 
 (1922).
 

 C. Analysis
 

 Not every improper remark made by the trial court requires re-sentencing. "When considering an improper remark in the light of the circumstances under which it was made, the underlying result may manifest mere harmless error."
 
 State v. Pickard,
 

 143 N.C.App. 485
 
 , 490,
 
 547 S.E.2d 102
 
 , 106 (2001) (quotation and citation omitted).
 

 The sentence contained in the written judgment is the actual entry of judgment and the sentence imposed.
 
 State v. Crumbley,
 

 *768
 

 135 N.C.App. 59
 
 , 66,
 
 519 S.E.2d 94
 
 , 99 (1999). The sentence announced in open court is merely the rendering of judgment and does not control.
 
 State v. Hanner,
 

 188 N.C.App. 137
 
 , 139,
 
 654 S.E.2d 820
 
 , 821 (2008).
 
 See also
 

 Abels v. Renfro Corp.,
 

 126 N.C.App. 800
 
 , 803,
 
 486 S.E.2d 735
 
 , 737 ("Announcement of judgment in open court merely constitutes 'rendering' of judgment, not entry of judgment."),
 
 disc. review denied,
 

 347 N.C. 263
 
 ,
 
 493 S.E.2d 450
 
 (1997).
 

 While the transcript shows the trial court made oral comments during sentencing that the sentences imposed would run consecutively to
 
 *822
 
 any sentence Defendant might receive in the future, these comments or conditions are not reflected in Defendant's written and entered judgment. Defendant's sentence was imposed within the presumptive range allowed by statute and is presumed to be regular and valid.
 
 State v. Earls,
 

 234 N.C.App. 186
 
 , 193,
 
 758 S.E.2d 654
 
 , 659 (2014). Defendant has not overcome this presumption. This argument is overruled.
 

 VII. Conclusion
 

 The State laid a proper foundation to admit a recording of Defendant's confession to illustrate the witness' testimony. Surveillance recordings of other larcenies Defendant participated in were properly introduced and limited as Rule 404(b) evidence.
 

 The State's evidence was insufficient to support submitting the charge of conspiracy to commit common law robbery to the jury. Defendant's motion to dismiss should have been granted. Defendant's conviction for conspiracy to commit common law robbery is reversed.
 

 Defendant has failed to show any reversible error resulting from the trial court's comments at sentencing. These comments are not reflected in the final written judgment entered.
 

 NO ERROR IN PART, REVERSED IN PART, AND REMANDED.
 

 Judges CALABRIA and HUNTER, JR concur.